**Lewis J. JACKSON, Plaintiff,**

v.

**VETERANS ADMINISTRATION,**
**Defendant.**

No. 79 C 2102.

United States District Court,
N. D. Illinois, E. D.

Sept. 8, 1980.

---

Steven J. Bernstein, Chicago, Ill., for plaintiff.

Margaret C. Gordon, Asst. U. S. Atty., Chicago, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are cross–motions for summary judgment. For the reasons herein stated, this court denies plaintiff's motion and grants defendant's motion.

Plaintiff, Lewis J. Jackson, has brought this suit for damages claiming that Ms. Quandt, Director of the Veteran's Administration Hospital, North Chicago, Illinois, intentionally disclosed confidential information concerning plaintiff to a third party without plaintiff's prior consent, thereby violating the Privacy Act. 5 U.S.C. § 552a(b).

The parties agree that the facts are not in dispute. Plaintiff Jackson was employed by the Veteran's Administration at its North Chicago Hospital from May 16, 1976 to January 28, 1977, when he resigned. At the time of his resignation, termination proceedings were pending against plaintiff.

Sometime between plaintiff's termination and his subsequent employment on May 17, 1977, a dispute arose between plaintiff and Ms. Quandt regarding plaintiff's access to the Veteran's Administration facilities.

On April 26, 1977, Ms. Quandt wrote a letter to plaintiff in which she stated that she was imposing limitations on plaintiff's access to the VA Hospital and in which she apparently warned plaintiff that he would be subjected to criminal prosecution for violation of those limitations.

On May 17, 1977, plaintiff obtained employment as a police officer with the Department of Navy, Great Lakes, Illinois.

It is undisputed that on May 27, 1977, Ms. Quandt, without obtaining plaintiff's consent, called Leroy Ellis, Chief of Security at the Naval Base at Great Lakes, Illinois, and plaintiff's supervisor, to relay to him that VA officials in Washington, D.C. had told her that plaintiff Jackson had threatened various VA personnel, and to ask Ellis whether the Navy Security force and, therefore, plaintiff carried guns. In addition, it is undisputed that Ms. Quandt further inquired as to whether the Navy had reviewed plaintiff's references and previous employment and stated that such a review would have shown that plaintiff resigned from the VA pending termination for "poor judgment in the performance of his duties." Ms. Quandt may also have told Ellis that she had written a letter to plaintiff excluding plaintiff from the hospital grounds except for certain express purposes.

The sole question facing this court is whether the information disclosed by Ms. Quandt to Mr. Ellis concerning plaintiff constituted an unlawful disclosure within the meaning of the Privacy Act since plaintiff's consent was not obtained.

■ Under the Privacy Act's provisions, *any* disclosure of information covered by the Privacy Act is prohibited unless authorized by the prior written consent of the individual whose information is disclosed or unless authorized by one or more of the Act's specific exceptions. See, 5 U.S.C. § 552a(b); *Local 2047 v. Def. Gen. Sup.*, 423 F.Supp. 481, 483 (E.D.Pa.1976) aff'd. 573 F.2d 184 (4th Cir. 1978); see also, Note, The Privacy Act of 1976: An Overview, 1976 Duke L.J. 301 (1976).

■ In the immediate case, defendant concedes that no prior consent to disclose information was obtained from the plaintiff, and that Ms. Quandt transmitted the information alleged in the complaint to Mr. Ellis. Additionally, defendant does not contend that the information was properly disclosed pursuant to an exception under the Act.

Rather, defendant's position, is that the information disclosed is not covered by the Privacy Act.

Section 552a(b) of the Privacy Act provides, with certain exceptions, that:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person,

or to another agency, except pursuant to a written consent by, or with the prior written consent of, the individual to whom the record pertains.

Section 552a(g)(1)(D) provides in relevant part that:

Whenever any agency ... (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

The individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

In order to prevail in this action, plaintiff must show that the information disclosed constituted "a record which is contained in a system of records" pursuant to the Privacy Act.

While defendant concedes that the plaintiff's personnel file ("OPF") is such a system of records within the meaning of the Privacy Act, it is defendant's contention that the information disclosed was not a record contained in plaintiff's OPF or in any system of records concerning the plaintiff.

Apparently arguing in the alternative, the defendant also contends that none of the disclosed information is protected or intended to be protected by the Privacy Act of 1974.

First, we note that plaintiff Jackson concedes that Quandt's disclosure of information relating to Jackson's activities subsequent to his termination from the VA Hospital is not covered by the Privacy Act's protections.

Consequently, plaintiff's only argument concerns Quandt's disclosure of the fact that Jackson resigned pending termination proceedings, a fact which is, and which defendant acknowledges is, contained in plaintiff's OPF file.

Our inquiry, then, is whether the disclosure of this information admittedly contained in plaintiff's OPF file is one subject to the Privacy Act's protections thereby entitling plaintiff to damages for his alleged injury, which is his loss of job at Great Lakes. This court finds the reasoning in *Savarese v. U. S. Department of HEW*, 479 F.Supp. 304, 306–308 (N.D.Ga. 1979) to be particularly applicable to the instant case.

In *Savarese*, an official of the defendant had a telephone conversation with plaintiff's prospective employer indicating that plaintiff had had prolonged problems with his employment and that he had once been absent without leave. This information was formalized in a letter from defendant to the prospective employer in which the defendant confirmed his recommendation that plaintiff not be hired. The conversation and the letter formed the basis of plaintiff's claim for damages under the Privacy Act. The plaintiff contended that because the information which defendant disclosed was contained in a system of records in the agency, the information could not be disclosed without his permission. The court, finding such a view implausible, stated that

Under plaintiff's view no government employee could utter a single word concerning any person without first reviewing all systems of records within the agency to determine whether or not the information in question was contained therein. In day–to–day operations of the federal government, officials are appropriately called on to make numerous statements concerning persons who may have information concerning them contained in a system of records somewhere within the agency. It borders on the absurd to contend that all officials should have a pansophic recall concerning every record within every system of records within the agency.

The court concluded after considering the Privacy Act's stated purpose and the related Congressional findings [1] that for a disclosure to be covered by § 552a(b), there must have initially been a *retrieval* from the sys-

---

1. Pub.L.No. 93–579, § 2, 88 Stat. 1896.

tem of records which was at some point a source of the information. It went on to state that

> ... Congress had as its purpose the control of the unbridled use of highly sophisticated and centralized information collecting technology ... That problem is not, however, present in this action. On the contrary, there was no utilization whatsoever of such an information system to retrieve the information at issue in this case. It may have been in such a system, but the uncontradicted evidence shows that no retrieval or disclosure from such a system was present. *Savarese* at 308.

It could conceivably be argued that had the defendant in *Savarese* or in this case read from a record or summarized document specifically retrieved from a system of records, a claim might be cognizable under the Act. However, in the present action (as in *Savarese*) where only independently acquired information was disclosed, there is no violation of either the letter or the spirit of the Act.[2]

As a practical matter, including the kind of disclosure which occurred in the instant case under the protection of the Act would create an administrative nightmare, making it nearly impossible for federal officials to know when communication of information based on personal knowledge might lead to criminal and/or civil liability under the Privacy Act. There is no provision of the Privacy Act which prohibits providing information to a third party without prior consent of the subject which a federal official has acquired from personal observation or knowledge obtained from sources other than a record within the meaning of the Privacy Act. To hold otherwise is inconsistent with Congressional intent and with the effective administration of government programs.

It is noteworthy in this regard that plaintiff's OPF was forwarded to the National Personnel Records Center following his resignation from VAMC and was not in the VA's custody or control after April 8, 1977. At such time as plaintiff transferred to another federal agency, the folder would be transferred to the new employing agency upon that agency's request. 5 CFR §§ 293.-219 and 293.208.

Moreover, in *King v. Califano,* 471 F.Supp. 180 (D.D.C.1979), the plaintiff claimed damages based on the alleged disclosure of his personnel and medical records in violation of the Privacy Act. The *King* Court, citing the OMB Guidelines and *Green v. Veterans Administration,* No. 76–461 (M.D.N.C., July 3, 1978), concluded that the information alleged to have been divulged was an opinion stated from memory and did not constitute a record within the meaning of the Act. *King, supra,* at 181.[3] In the instant case as in *Green* and *King,* the official alleged to have divulged protected information had knowledge of the facts disclosed independent of any record in plaintiff's OPF or elsewhere. It would be impossible to assume that Marjorie Quandt, as Director of the VAMC, would not have had independent knowledge of the circumstances of plaintiff's resignation given his history of problems at that facility.

Merely because information disclosed in a telephone conversation was also contained within plaintiff's OPF does not sustain an action for damages under the Privacy Act. Granting that the fact of plaintiff's involuntary resignation was communicated without plaintiff's prior consent, the inquiry must go further. The record shows that Quandt did not and could not have referred to or utilized records retrieved from plaintiff's OPF at the time of or prior to the conversation. Even though the fact of plaintiff's resignation pending termination is a component of his OPF, the information

---

2. The *Savarese* Court noted that the defendant official was not the custodian of the system of records and in fact had no knowledge of its precise contents. *Savarese* at 308–309. The same observation is appropriate as to Marjorie Quandt and the defendant here.

3. The information allegedly disclosed in *King* was that the plaintiff had "severe mental and emotional problems" that made him unfit for duty. The court does not indicate whether such information was in fact contained in his personnel records.

Quandt communicated was not retrieved or disclosed from a record within his OPF. There not only is no evidence to indicate that Quandt had ever seen the folder, plaintiff has argued that this fact would be irrelevant. This court disagrees.

Accordingly, it is ordered that plaintiff's motion for summary judgment be and the same is hereby denied, and that defendant's motion be and the same is hereby granted.